FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA   2005 JAN -5  AM 9: 57

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| ROWAN COMPANIES, INC. and | * | CIVIL ACTION |
| ROWAN MARINE SERVICES, INC., | * | |
| Plaintiffs | * | NO. **05-0030** |
| VERSUS | * | |
| | * | |
| THE GREATER LAFOURCHE PORT | * | |
| COMMISSION; J. WAYNE PLAISANCE, | * | SECTION "___" |
| INC; CONTINENTAL CONSTRUCTION | * | |
| COMPANY, INC.; EUSTIS | * | |
| ENGINEERING CO., INC.; VULCAN | * | MAGISTRATE SECT. K MAG. 2 |
| CONSTRUCTION MATERIALS, LP; | * | |
| VULCAN MATERIALS COMPANY; and | * | |
| CORE INDUSTRIES, INC. | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

NOW COME, Plaintiffs, Rowan Companies, Inc. and Rowan Marine Services, Inc., who file this Original Complaint, and who for their causes of action, would show the court the following:

I.

Plaintiff, Rowan Companies, Inc., is a Delaware corporation with its principal place of business in Houston, Harris County, Texas.

II.

Plaintiff, Rowan Marine Services, Inc., is a Texas corporation with its principal place of business in Houston, Harris County, Texas.

III.

Defendant, Greater Lafourche Port Commission, is a political subdivision of the state of Louisiana.

*Plaintiffs' Original Complaint*
*Rowan Companies, et. al vs. Greater Lafourche Port Commission, et. al*
*Page 1*

Fee $150.00
Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No _____

IV.

Defendant, J. Wayne Plaisance, Inc., is a corporation organized under the laws of the state of Louisiana.

V.

Defendant, Continental Construction Company, Inc., is a corporation organized under the laws of the state of Tennessee and is duly registered to conduct business in the State of Louisiana.

VI.

Defendant, Eustis Engineering Co., Inc., is a corporation organized under the laws of the state of Louisiana.

VII.

Defendant, Vulcan Construction Materials, LP, is a partnership organized, upon information and belief, under the laws of the state of New Jersey and is duly registered to conduct business in the state of Louisiana.

VIII.

Defendant, Vulcan Materials Company, is a corporation organized under the laws of the state of New Jersey and is duly registered to conduct business in the state of Louisiana.

IX.

Defendant, Core Industries, Inc., is a corporation that conducts business in the state of Louisiana, yet does not maintain a registered agent for service of process within this state.

X.

The court has subject-matter jurisdiction over Counts One through Four and over Count Six in this matter pursuant to 28 U.S.C. §1332(a)(1) inasmuch as the plaintiffs and the defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

Count Five against defendants, Vulcan Construction Materials, LP, Vulcan Materials Company, and Core Industries, Inc., falls within the court's admiralty jurisdiction. 28 U.S.C. §1333(1).

Subject-matter jurisdiction over this matter also exists pursuant to the Extension of Admiralty Jurisdiction Act. 46 U.S.C. §740.

XI.

The claims in this Complaint arise, in part, out of torts committed within Lafourche Parish. Other claims arise out of the breach of a contract for the lease of land and associated improvements located in Lafourche Parish.

XII.

Rowan Marine began operations at Port Fourchon in 2000. Rowan Marine originally operated out of a facility located at C-Port 2, Slip No. 3. Given the limitations placed on Rowan Marine's operations by its location at the C-Port slip, Rowan Marine decided to develop a new dockside facility in Port Fourchon.

XIII.

Defendant, Greater Lafourche Port Commission ("the Port Commission"), developed and leased property in Port Fourchon where Rowan Marine established operations and where it intended to develop a thirty-six acre offshore service facility.

XIV.

On June 21, 2001, the Port Commission invited Rowan Marine to lease Lot 2 and Lot 3 in its Northern Expansion area. The agreements entered into between the Port Commission and Rowan Marine recited that the Port Commission was in the process of constructing its Northern Expansion Development Project, which, at that time, had an anticipated completion date of December 2002.

XV.

The agreements specifically recited, as conditions for the contract between the parties, that a steel bulkhead and channel dredging in front of the bulkhead be completed, with the resulting slip having a depth of 23 feet and, ultimately, a width of 700 feet.

XVI.

The Port Commission and Rowan Marine further agreed they would enter into a more definitive lease once the leased premises were elevated to a high point of six feet, sloped to drain, the bulkhead was complete, and either a four hundred foot wide slip– at a minimum–was constructed or Rowan Marine was prepared to occupy the leased premises, whichever occurred first. In consideration of the two agreements, Rowan Marine paid an implementation fee of $58,767.56.

XVII.

The Port Commission began to develop the Northern Expansion area at Port Fourchon in 2000. Defendant, J. Wayne Plaisance, Inc. ("Plaisance"), was hired as the structural engineer for the project.

XVIII.

In the summer of 2000, Defendant, Eustis Engineering Company, Inc. ("Eustis"), was hired by Defendant Plaisance, to perform a geotechnical investigation to determine subsoil stratification and the physical properties of the various substrate existing in and around Slip A of the Northern Expansion area.

XIX.

On September 21, 2000, Defendant Eustis provided its report to Defendant Plaisance.  Included in its report were recommendations concerning site preparation, rigid and flexible pavement designs, and bulkhead and foundation construction procedures.

XX.

The steel bulkhead was designed and engineered by Defendant Plaisance and constructed by Defendant, Continental Construction Company ("Continental"), at the direction of the Port Commission.  The bulkhead was constructed between April 2001 and March 2002.  Defendant Plaisance issued the as-built drawings for the steel bulkhead on August 14, 2002.

XXI.

Rowan Marine entered into the "more definitive lease" contemplated by the June 21st agreements on December 12, 2002.   In consideration of the rental paid to the Port Commission, Rowan Marine was granted exclusive rights to use the leased premises in the following manner:

1. as a terminal facility for Rowan Marine's vessels and oilfield service business;

2.  for the operation of base facilities for Rowan Marine and its customers;

3.  for the operation of commercial storage facilities;

4.  for the operation of dockage facilities and other related activities;

5.  for the provision of offices, yard space, storage space and services for rent to Rowan Marine's customers; and

6.  for any other related activities approved by the Port Commission.

The primary term stated in the lease was ten (10) years from April 1, 2003, the commencement date specified in the lease. Rowan Marine was also provided an option in the lease to extend the lease term for up to four additional five-year periods.

XXII.

Rowan Marine occupied its new facility in April 2003 and began paying monthly rental payments for basic rental of $24,069.99 and an improvement rental of $34,336.23, totaling $58,406.22. The improvement rental, as contemplated by Rowan Marine's lease with the Port Commission, was earmarked to offset the $2,625,619.68 the Port Commission invested in constructing the steel bulkhead and related improvements on the leased property.

XXIII.

Rowan Marine has continued to make these monthly rental payments since it occupied the leased premises. As of September 3, 2004, Rowan Marine had paid $984,191.58 to the Port Commission for implementation fees and monthly rentals.

XXIV.

While the Port Commission was constructing the improvements on Rowan Marine's new facility, Rowan Marine began to enter into subleases and develop revenue

sharing arrangements with other service providers and merchants to complement its own services.

### XXV.

On March 25, 2003, an agreement was entered into with PSC Industrial Outsourcing, Inc. ("PSC") for the use of two parcels of land on Rowan Marine's new facility, exclusive use of one hundred fifty feet of the bulkhead, and office and accommodation space. The term of this lease was two years. As consideration for this sublease, Rowan Marine was to be paid $18,600 per month during the first year of the lease and an additional 2.5% over the previous term's monthly rent for the year thereafter.

### XXVI.

On January 6, 2004, Rowan Marine entered into a Diesel Fuel and Petroleum Products Agreement with Simons Petroleum, Inc. ("Simons"). Pursuant to this agreement, Simons "agreed to construct, install and place into service a diesel fuel marketing installation and other equipment relating to the storage and delivery of petroleum products. Simons would pay Rowan Marine 50% of the net profit of all diesel fuel sold, less one cent per gallon, until it recouped a total of $500,000; 10% of the gross selling price of all other petroleum products; and a preferential purchase price for diesel purchased for its own use. Rowan Marine's main obligation to Simons under the agreement was to provide Simons with up to six hundred feet of nonexclusive dock space and the dock personnel necessary to supply fuel delivery services. The term of this agreement was for ten years.

XXVII.

Rowan Marine also entered into a revenue sharing arrangement with Total Supply Services to set up a dockside supply house to sell merchandise used in the offshore oil and gas industry.

XXVIII.

In addition to the agreements with PSC, Total Supply, and Simons, Rowan Marine also fielded requests by a variety of other companies related to the use of its new facility. These discussions included requests related to rig maintenance and repair, crane and forklift services, water sales, and the use of outside storage space, inside storage space and office space. All of these requests would have generated revenue for Rowan Marine, its sister companies that provide services to companies engaged in the offshore exploration and production industry, and ultimately, for its parent company, Rowan.

XXIX.

Once Rowan Marine occupied the leased premises, it began to make certain improvements to the facility with the aid of its contractor, R&S Construction. The Port Commission was aware that Rowan had planned these improvements and encouraged Rowan Marine to improve the property. These improvements began on January 21, 2003, and are continuing to the present time.

XXX.

Between June 14, 2003 and December 27, 2003, several tons of limestone aggregate were delivered to the premises leased by Rowan Marine. The limestone was delivered to the leased premises by barge and offloaded by a crane mounted on a separate barge sitting in the navigable waters running alongside the steel bulkhead. The crane-

mounted barge was owned and operated by Defendant, Core Industries, Inc. .

## XXXI.

On January 14, 2004, a ten-inch horizontal deflection in the bulkhead was discovered.  A cause of the failure of the bulkhead system was, in part, the loads placed on the bulkhead system by a pile of limestone aggregate that had been off loaded by the crane mounted barge and placed behind the bulkhead.  Rowan Marine had purchased this limestone from Defendant, Vulcan Construction Materials, LP, or Defendant, Vulcan Materials Company (collectively, "Vulcan").

## XXXII.

In correspondence dated January 21, 2004, the Port Commission informed Rowan Marine that its inspection of the facility "did not find the premises to be in an acceptable condition."  In accordance with the terms of its lease with the Port Commission, Rowan Marine was provided fifteen days in which to respond to the Port Commission's allegation that it was responsible for repairing the damage to the bulkhead.

## XXXIII.

The bulkhead system is an essential feature of the premises leased by Rowan Marine.  It is an improvement constructed to provide structural support for the entire facility near the slip.  It also serves as a dock used by Rowan Marine, its sublessees and its customers.  It provides access to the slip where rigs and boats serviced at the facility moor while using the facility.  The bulkhead system is designed and engineered to support the improvements Rowan Marine intended to construct on the leased facility and the operations it planned to conduct as an offshore oil and gas service facility.

XXXIV.

In an effort to determine how to repair the damage caused to the bulkhead, Rowan Marine hired an engineer to perform an analysis of the displacement and to design a repair for the bulkhead. This engineer concluded that he would be unable to continue with a recommendation for its repair because the bulkhead "system is inadequate under normal operating conditions."

XXXV.

On February 4, 2004, the Port Commission, having been advised of the design defect in the bulkhead system, requested Plaisance to investigate the problem. On February 5th, Rowan Marine informed the Port Commission that it also was continuing to investigate the cause of the bulkhead failure.

XXXVI.

Plaisance responded to the Port Commission's request for information concerning the design of the bulkhead on February 5, 2004. Plaisance acknowledged that it had erred in its design of the bulkhead and admitted it had used improper soil data for the portion of the bulkhead on Rowan Marine's property.

XXXVII.

Given the potential risk to Rowan Marine's employees, customers, and equipment posed by the defective condition of the bulkhead system, Rowan Marine instructed its employees to discontinue use of the facility near the bulkhead until its safety could be verified.

XXXVIII.

As a result of the failure of the bulkhead system, Rowan Marine's efforts to build its service facility were unreasonably and unnecessarily delayed pending a solution for remedying the defective bulkhead.

XXXIX.

During the course of its investigation, Rowan Marine determined that the problems with the design of the bulkhead system and its construction were more extensive than initially suspected.   The as-built capacity of the bulkhead was inadequate for the intended conditions and did not meet the design specifications.  Of the four main components of the bulkhead system, only one component, the tie rods, were actually suitable for their intended purpose.  Even in this case, however, the connection of the tie rods to the wale beam was not adequate to transfer loads uniformly onto the wale beam. On June 28, 2004, Plaintiffs were informed that insufficiencies prevented the existing bulkhead from safely meeting the intended design capacity and that the existing bulkhead system must be replaced or that revised limitations on bulkhead loading must be implemented.

XL.

Article X of the December 12, 2002 lease required that the Port Commission repair any defects in the bulkhead.  Rowan Marine informed the Port Commission that its delay in repairing the bulkhead had caused substantial losses to Rowan Marine's business and had significantly delayed the development of its service facility.

XLI.

The Port Commission 's failure to repair or replace the bulkhead has left Rowan Marine without a workable solution to remedy or repair the entirety of the bulkhead system while it is still being charged full rent for the entire facility.

XLII.

The Port Commission has failed to recognize that the entire bulkhead on Rowan Marine's property is defective.  The entirety of the bulkhead is damaged, defective and in need of repair, and its condition prevents the use of the docking area immediately adjacent to the slip.

XLIII.

The actual construction of the bulkhead, as well as its design, poses an impediment to a timely and cost-effective solution for its repair. Defendant, Continental Construction Company, Inc. ("Continental"), was hired to construct the bulkhead system, and was responsible for documenting its construction activities in a thorough and competent manner.  Review of the pile driving records, compiled in the field during installation of the timber piles that anchor the concrete deadman, reveals that one third or more of the piles in each concrete deadman do not meet the minimum criteria required for their installation.  Less than 25% of the pile installations have been competently and appropriately documented.

XLIV.

Without adequate resistance from the timber piles supporting the concrete deadman, the anchor system is not capable of safely resisting the horizontal forces from the main wall.  The lack of complete field records on the installation of these piles

prohibits any reliable engineering determination of the actual capacity of the anchor system. As a result, any solution to repair the bulkhead must necessarily account for the incompetence of Continental.

XLV.

The failures of Plaisance, Eustis, and Continental in designing and constructing the bulkhead system, the negligence of Vulcan and Core Industries, Inc. in discharging the limestone aggregate into large piles on the leased premises without inquiring into the capacity of the premises to handle the loads generated by the weight of the rock, and the failure ultimately of the Port Commission diligently to repair and to maintain the improvements it placed on the leased premises in accordance with its obligations under the lease and the representations made independent of the lease have damaged and continue to damage Rowan and Rowan Marine.

XLVI.

Rowan Marine, its customers, and its sublessees have been deprived of full access to the bulkhead. As a result, Rowan Marine is unable to operate at "full capacity." To date, Rowan Marine has been forced to absorb the expense of operating a facility that has been severely compromised in its ability to generate revenue because of the failure of the entire length of the bulkhead system on Rowan Marines' premises.

XLVII.<br>Count One<br>The Port Commission Breached the Lease Contract

The December 12, 2002 Contract of Lease requires the Port Commission to construct improvements, including the bulkhead system, as a condition of the lease. In addition, the lease obligates the Port Commission to maintain and to repair, at its

expense, all improvements, except repairs for improvements made necessary as the result of Rowan Marine's negligence. The Port Commission has failed to repair and/or to maintain the bulkhead system as contractually required and, therefore, has breached its contract and obligations to plaintiffs.

XLVIII.

The Port Commission is required to maintain its property in a fit manner for the purposes for which it was leased. This warranty requires the Port Commission to make all repairs that are not ordinary. The Port Commission must protect Rowan Marine against all vices and defects in the leased premises that prevent the premises from being used.

XLIX.

Given the defective nature of the bulkhead system, plaintiffs are presently, and have been for some time, unable to use and enjoy the leased premises as was intended. As a result of the failure of the Port Commission to honor its obligations and the concurrent existence of the vices and defects in the premises leased to the plaintiffs by the Port Commission, plaintiffs seek all damages to which they are entitled, including a declaration that Rowan Marine be relieved of the obligation to continue making payments to the Port Commission for basic rental or improvement rental until the bulkhead is suitably repaired or replaced, for return of past rental payments from the date the deflection in the bulkhead was found through the present time, for the costs incurred in hiring engineering consultants, for the profits which would have been earned but for the failure of the leased premises to be free of defects and vices, for attorney's fees and all other damages, both general and special, to which they may be entitled upon a

demonstration of competent proof.

L.

Count Two

Tort Claims against the Port Commission

Misrepresentation of the 250psf intended design capacity

The Port Commission owed plaintiffs the duty to use reasonable care and competence in obtaining or ascertaining facts for the benefit of plaintiffs and in communicating such facts or opinions concerning the intended design capacity of the bulkhead as built.  The Port Commission knew Rowan Marine to be the intended user of the information concerning the design capacity of the bulkhead system.  The plaintiffs were members of the limited group for whose benefit and guidance the information was contracted and supplied.  The Port Commission owed this duty to the plaintiffs because of its knowledge that the ultimate purpose for this information, and its employment, was to facilitate the development and use of the leased premises occupied by Rowan Marine.

LI.

Count Three

Third-party beneficiary claim against

Plaisance, Eustis, and Continental

Plaintiffs are the intended third-party beneficiaries of the contracts entered into by the Port Commission with Plaisance, Eustis, and Continental for the design and construction of the bulkhead system, because such contracts were entered into and intended for the benefit of plaintiffs.  As third-party beneficiaries of the contracts to build entered into by these defendants with the Port Commission, plaintiffs have suffered damage as a result of these defendants' poor and substandard work and their failure to comply with the terms of their obligation to the Port Commission.

LII.

These defendants incurred the obligation to design and to construct the bulkhead system, and they assumed the duty to perform their work in a skillful, careful, diligent, and good workmanlike manner.   These defendants failed to construct the bulkhead system in such a manner and, in fact, constructed the bulkhead system in a defective manner using faulty materials.

LIII.

As a result of the defective nature of the bulkhead system, plaintiffs are presently, and have been for some time, unable to use and to enjoy the leased premises as was intended.   As a result of the failure of Plaisance, Eustis, and Continental to honor their obligations and the concurrent existence of the vices and defects in the bulkhead system constructed by these defendants, plaintiffs seek all damages to which they are entitled, including the reimbursement of past rental payments, the costs incurred in hiring engineering consultants, the profits which would have been earned in the past and that in reasonable likelihood would have been earned in the future but for the failure of the leased premises to be free of defects and vices, attorney's fees, and all other damages, both general and special, to which they may be entitled upon a demonstration of competent proof.

LIV.
Count Four
Negligence of Plaisance, Eustis, and Continental

Plaisance, Eustis, and Continental knew that the bulkhead system they were obligated to construct would be for the benefit of the Port Commission's lessee.   These defendants knew or should have known that their inability properly and competently to

design, to engineer, and to construct the bulkhead system would, in all reasonable likelihood, cause economic injury to lessees, such as the plaintiffs. Furthermore, it was foreseeable that the Port Commission's lessee would be injured by the negligence of Plaisance, Eustis, and Continental. Plaisance, Eustis, and Continental negligently designed and constructed the bulkhead system and their negligence was a proximate cause of the attendant damages to plaintiffs.

LV.
Count Five:
Negligence of Vulcan and Core Industries, Inc.

Defendants, Vulcan and Core Industries, Inc., delivered and discharged upon the leased premises limestone aggregate without concern for the design limitations of the leased premises. These defendants knew or should have known that vertical loads in amounts greater than those permitted by the design parameters governing loads on the leased premises would, in all reasonable likelihood, cause damage to the premises and resulting economic injury to plaintiffs. As a result, Vulcan and Core Industries, Inc. should have determined whether the loads placed upon the premises would be within the parameters required of the bulkhead system. Vulcan and Core Industries, Inc. failed to make this determination prior to offloading the limestone aggregate. The limestone aggregate they deposited on plaintiff's premises exceeded its design limitations. For these reasons, plaintiffs bring a claim against Vulcan and Core Industries, Inc. for their negligence in failing to determine the design capacity of the premises and associated bulkhead before discharging the limestone aggregate to the premises and the attendant damages to plaintiffs resulting therefrom.

LVI.
Count Six:
Declaratory Judgment for dissolution of lease contract

Paragraphs XII through XLII are reincorporated as if fully set forth herein. Pleading in the alternative, the lease between the Port Commission and Rowan Marine binds the Port Commission to provide Rowan Marine the enjoyment of the leased premises according to its terms. Pursuant to the contract of lease, the Port Commission agreed to bind itself to maintain the leased premise in a condition that serves the use for which it was hired and to cause Rowan Marine to be in peaceable possession of the leased premises during the continuation of the lease. The failure of the Port Commission to fulfill either of these obligations constitutes a breach of contract. Rowan Marine has requested the Port Commission to replace or to repair the defective bulkhead system. To date, the Port Commission has failed to replace or to repair the bulkhead system as required by the lease. Rowan Marine therefore requests a declaration by this court that the contract for lease between the Port Commission and Rowan Marine be dissolved. More specifically, Rowan Marine requests a finding that the Port Commission, through its failure to remedy the defects in the bulkhead system, has constructively evicted Rowan Marine from the leased premises. As a result of the substantial impairment of the leased premises caused by the acts and omissions of the Port Commission, plaintiffs seek reimbursement of all costs expended, to date, for improvements made to the site, the return of all money paid to the Port Commission under the lease, and all other damages to which plaintiffs may be justly entitled.

LVII.

Plaintiffs request a trial by jury.

LVIII.

Defendants are jointly and severally liable for each and every element of damage that plaintiffs are legally entitled to recover, including, but not limited to the following:

1.     the amount of all foreseeable and consequential losses sustained by the plaintiffs;

2.     the amount paid to date in rental payments from the date of the failure until the bulkhead system is repaired;

3.     the costs incurred in hiring engineering consultants to investigate the failure and address the repair of the bulkhead;

4.     the profits which would have been earned by the plaintiffs and of which they were deprived because of the failure of the leased premises to be free of defects and vices;

5.     any and all obligations owed to plaintiffs' sublessees resulting from the aforementioned conduct of the defendants;

6.     the amount paid in attorneys' fees resulting from the conduct complained of in this suit; and

7.     all other damages, both general and special, to which plaintiffs may be entitled to upon a demonstration of competent proof.

LIX.

Pleading further, Rowan Marine seeks a declaration that the obligation to make any rental payment required under the lease be suspended until such time as the bulkhead

system is competently and properly repaired or replaced.

LX.

Pleading further, and in the alternative, Rowan Marine requests a declaration by this Court that the contract for lease between the Port Commission and Rowan Marine be dissolved and that plaintiffs recover all other damages to which they are lawfully entitled.

WHEREFORE, plaintiffs, Rowan Companies, Inc. and Rowan Marine Services, Inc., pray for damages against the defendants, The Greater Lafourche Port Commission; J. Wayne Plaisance, Inc.; Continental Construction Company, Inc.; Eustis Engineering Co., Inc.; Vulcan Construction Materials, LP; Vulcan Materials Company; and Core Industries, Inc., in an amount reasonable under the premises, with judicial interest from date of the loss until paid, plus all costs of these proceedings, and for all general and equitable relief, and for trial by jury.

**Respectfully submitted,**
**GAINSBURGH, BENJAMIN, DAVID,**
**MEUNIER & WARSHAUER, L.L.C.**

**By:** _Stevan C. Dittman_

**STEVAN C. DITTMAN**
**Bar No. 16888**
**2800 Energy Centre**
**1100 Poydras Street**
**New Orleans, LA 70163-2800**
**(504) 522-2304**
**(504) 528-9973 (Facsimile)**

**and**

MALONEY,   MARTIN   &
MITCHELL, L.L.P.

MICHAEL J. MALONEY, T.A.
Texas Bar No. 12883550
JONATHAN AXELRAD
Texas Bar No. 00796146
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 (Facsimile)

ATTORNEYS FOR PLAINTIFFS